UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                      Case No. 3:21-cr-504

        Plaintiff,

   v.                                         MEMORANDUM OPINION
                                                         AND ORDER

Jeremy Adams,

        Defendant.

## I.    Introduction

Defendant Jeremy Adams, proceeding *pro se*, has filed a motion for release from pretrial detention pursuant to 18 U.S.C. § 3164, and for the return of his personal property. (Doc. No. 44). The government filed a brief in opposition to the motion. (Doc. No. 46). Adams filed a brief in reply. (Doc. No. 49). The government then filed a sur-reply brief, addressing new arguments concerning ends-of-justice continuances and the return of his property. (Doc. No. 53). Adams also filed an objection to an exclusion of time entered on September 6, 2022, and a motion for an expediated ruling on his motion for release. (Doc. No. 54). For the reasons stated below, I deny Adams' motions.

## II.    Background

On November 6, 2020, Adams was charged by criminal complaint with one count of sexual exploitation of a minor, production of child pornography, in violation of 18 U.S.C. § 2251(a). (Doc. No. 1). He was arrested at his home in Lodi, California on May 18, 2021, before being transferred

to the Northern District of Ohio. (*See* Doc. No. 3-1 and 3-2). Adams waived his right to a preliminary hearing and appeared via video conference before Magistrate Judge Darrell A. Clay for a detention hearing on June 23, 2021. (*See* non-document entry dated June 23, 2021). Judge Clay concluded Adams failed to rebut the presumption in favor of detention arising under 18 U.S.C. § 3142(e)(3) and concluded, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably assure the safety of others and the community if Adams were released. (Doc. No. 9 at 2-3). Then, on July 7, 2021, Adams was indicted by a grand jury on one count of sexual exploitation of a minor (production), in violation of § 2251(a). (Doc. No. 10).

At the time of his indictment, Adams was represented by retained counsel. Adams, through retained counsel, filed a motion for pretrial release on October 7, 2021. (Doc. No. 15). Eight days later, on October 15, 2021, Adams filed a motion to suppress evidence obtained pursuant to a search warrant issued by a California state court judge in July 2020. (Doc. No. 17). The motion also sought suppression of evidence obtained from subsequent searches of his property. (*Id*). Those subsequent searches had uncovered photographs and videos on Adams' electronic devices of Adams and a female who, it was eventually determined, was 17 years old at the time the photos and videos were taken. (*See* Doc. No. 34 at 1-4).

The government filed its brief in opposition to Adams' motion for pretrial release on October 29, 2021. (Doc. No. 20). The government also sought two extensions of time to respond to Adams' motion to suppress. I granted both extensions (the second of which was granted over Adams' objection), and the government filed its brief in opposition on December 27, 2021. (Doc. No. 27). Adams filed reply briefs in support of both of his motions on January 28, 2022. (Doc. Nos. 32 and 33).

On May 24, 2022, I issued a memorandum opinion and order denying Adams' motion to suppress and set the case for a status conference on June 8, 2022. (*See* Doc. No. 34). During the

2

June 8 status conference, Adams' retained attorneys sought leave to file a motion to withdraw as counsel, which I granted. Counsel filed their motion on June 23, 2022, and requested that an attorney from the Federal Public Defender's Office ("FPD") be appointed to represent Adams. (Doc. No. 35). On June 29, 2022, I granted the motion to withdraw and appointed counsel from FPD to represent Adams. (*See* non-document entries dated June 29, 2022).

Approximately two months later, on August 24, 2022, Adams mailed two motions to the Clerk of Court. (See Doc. Nos. 43 & 44). In one motion, Adams requested that he be permitted to represent himself and that the FPD be appointed as standby counsel. In the second, Adams moved for his immediate release on his own recognizance due to alleged violations of the Speedy Trial Act, and for the return of some of his property.

On September 6, 2022, I held a hearing regarding Adams' motion to proceed *pro se*. After inquiring of the Defendant and his counsel, I granted the motion and appointed the FPD as standby counsel. I also instructed the Clerk of Court to file the documents Adams had mailed on the docket as *pro se* motions. (*See* non-document entry dated Sept. 6, 2022).

During the September 6 hearing, Adams made an oral motion to withdraw the October 7, 2021 motion for release, (Doc. No. 15), in light of his deemed-filed Speedy Trial motion. I granted the motion and deemed the October 7 motion as withdrawn, pursuant to Adams' request. Following the hearing, Adams clarified that he does not seek dismissal of his case pursuant to the Speedy Trial Act, only release from pretrial detention. (Doc. No. 45). The government filed its brief in opposition to Adams' motion for release on September 16, 2022, (Doc. No. 46), and Adams filed his brief in reply on September 22, 2022. (Doc. No. 49). The government filed its sur-reply brief on October 3, 2022. (Doc. No. 53).

3

III.    ANALYSIS

A.    THE SPEEDY TRIAL ACT

The Speedy Trial Act provides that a defendant "who is being held in detention solely because he is awaiting trial" shall be brought to trial "not later than ninety days following the beginning" of the period of continuous detention.[1] 18 U.S.C. § 3164(a)(1), (b). "The periods of delay enumerated in section 3161(h) are excluded" from this 90-day period. *Id.* § 3164(b). If the defendant is not brought to trial within 90 non-excludable days, a court shall "automatic[ally] review . . . the conditions of release" and release a detained defendant from custody until the trial commences. *Id.* § 3164(c).

Adams contends he is entitled to immediate release because more than 90 non-excludable days have passed since his arrest in California on May 18, 2021. The parties largely agreed on the total number of non-excludable days between Adams' arrest and his post-indictment arraignment.[2] Adams counts 38 non-excludable days between May 19 and July 13, 2021, (Doc. No. 44 at 2), while the government counts 44. (Doc. No. 46 at 3).

The primary dispute arises around the 116-day period following completion of briefing on the motion to suppress and the issuance of my decision. Adams argues that, while the first 30 days of this period are excludable under § 3161(h)(1)(D) and (H), the remaining 86 days in this period are not. (Doc. No. 44 at 5-6). The government argues the entire period, including the 86 days Adams challenges, are excludable based upon my November 12, 2021 order stating "[t]ime continues to remain excluded due to the pending motion to suppress" and, in the event that exclusion is not

---

[1] As I noted above, Adams specifically disclaims an intent to move for dismissal pursuant to § 3162 for an alleged violation of the 70-day speedy trial limit found in § 3161(c)(1).

[2] While the parties differ on exactly which days are countable, I conclude that dispute is immaterial, and I need not resolve it. (Doc. No. 44 at 2; Doc. No. 46 at 3).

4

sufficient, I am permitted to make an ends-of-justice finding excluding those 86 days. (Doc. No. 46 at 5 (citing non-document entry dated Nov. 12, 2021)).

In discussing the requirement in § 3161 that findings in support of an ends-of-justice continuance be set forth in the record of the case, the Supreme Court held that, "at the very least[,] the Speedy Trial Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Zedner v. United States*, 547 U.S. 489, 507 (2006). The government contends more than 30 days were necessary to resolve Adams' motion to suppress "due to the volume and complexity of the issues raised and the volume of materials submitted to the Court," and that I may more fully explain my findings in support of an ends-of-justice continuance in ruling on Adams' motion to release. (Doc. No. 46 at 7). Adams disagrees, arguing this continuance and finding cannot be entered retroactively. (Doc. No. 44 at 9-11).

There is some uncertainty in this area of the law. The *Zedner* Court itself noted the best practice "is for a district court to put its findings on the record at or near the time when it grants the continuance." 547 U.S. at 507 n.7. The Sixth Circuit, while warning district courts not to "invent after-the-fact findings to justify an ends of justice continuance," held that a district court's findings "'need not be included in the record at the time of the granting of the continuance.'" *United States v. Brown*, 819 F.3d 800, 814 (6th Cir. 2016) (quoting *United States v. Richmond*, 735 F.2d 208, 215 (6th Cir. 1984)).

As the government notes, the motion practice on the motion to suppress was lengthy and complex, totaling 75 pages of briefing and covering three separate, though related, search warrants. But I need not decide whether the period of time in which I had the suppression motion under advisement is subject to an ends-of-justice continuance, because that time was automatically excluded pursuant to § 3161(h)(1)(D) due to the pendency of Adams' motion for pretrial release.

5

Section 3161(h)(1)(D) automatically "excludes from the speedy trial period 'delay resulting from <u>any</u> pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'" *United States v. Tinklenberg*, 563 U.S. 647, 653 (2011) (quoting 18 U.S.C. § 3161(h)(1)(D)) (emphasis added). *See also United States v. Criswell*, 360 F. Supp. 3d 694, 706 (S.D. Ohio 2019) (holding defendant's motion for bond tolled the speedy trial clock).

On October 7, 2021, Adams moved for pretrial release, seeking review of Judge Clay's earlier detention order. (*See* Doc. No. 15). I addressed Adams' suppression motion before his motion for pretrial release because the suppression motion, if successful, would have had a material impact on some of the bases for Adams' detention. In particular, Judge Clay ordered that Adams be detained in part because the weight of the evidence against him was strong and, relatedly, because he was subject to a lengthy period of incarceration if convicted. (Doc. No. 9 at 2). If I had granted Adams' suppression motion, the government's case would have been significantly weakened, perhaps leading to the dismissal of the charges against Adams and his unconditional release. In these circumstances, "[r]equiring the Court to take the motion under advisement prematurely serves only to impose upon the Court's already . . . limited time and resources. Such a burden, in and of itself, undermines the purpose of the Speedy Trial Act." *United States v. Felix*, No. 1:17-CR-009, 2019 WL 2027226, at *5 (S.D. Ohio May 8, 2019) (citing *Tinklenberg*, 563 U.S. at 657). *See also United States v. Felix*, 850 F. App'x 374, 381-82 (6th Cir. 2021) (affirming district court's Speedy Trial Act ruling and noting the fact "the district court did not contemporaneously indicate its intent to hold a hearing following the completion of briefing is of no moment").

Adams' motion for pretrial release likely would have required a hearing and certainly would have required additional submissions by the parties. Adams' motion largely relied on changed circumstances caused by the Covid-19 pandemic and Adams' risk of serious complications if he were to contract Covid-19 while detained. (Doc. No. 15 at 4-10). There is no doubt that the

6

circumstances of the pandemic changed quickly.  Adams sought relief in October 2021 based upon his concerns about the Delta variant but, by the time Adams filed his reply brief in late January 2022, a newer variant (the Omicron variant) had developed and was responsible for a surge in Covid-19 cases in the early part of 2022.  *See* https://www.cdc.gov/mmwr/volumes/71/wr/mm7109e1.htm#:~:text=The%20B.-,1.1.,%E2%80%93January%202022%20(1) (last visited September 30, 2022).  Consideration of this prong of Adams' motion would have required up-to-date information about the conditions and Covid-19 protocols at the facility at which Adams is being detained, as well as Adams' medical conditions.

Adams also would have been required to provide additional information on his proposed custodian.  Adams previously submitted an affidavit from his mother, which stated Adams could return to live with her and that she would ensure Adams abided by his conditions of release.  But Judge Clay found this affidavit insufficient, (Doc. No. 9 at 3), and Adams did not provide any additional information in his briefing.  (*See* Doc. No. 15 at 14; Doc. No. 32).

The Speedy Trial Act excludes periods of delay from the filing of a pretrial motion "through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  Further, the 30-day exclusion in subsection (H) is not triggered until the relevant motion "is actually under advisement by the court."  *Id.* § 3161(h)(1)(H); *see also Felix*, 850 F. App'x at 381 (noting the 30-day exclusion applied to period of delay following completion of district court's hearing on government's motion in limine).  A pretrial motion is not considered "under advisement" until "the time the court receives all the papers it reasonably expects."  *Henderson v. United States*, 475 U.S. 321, 329 (1986).

As I have explained, Adams' motion required a hearing, further evidentiary support, or both, in addition to the potential, material impact of my decision on the suppression motion.  While Adams' motion for pretrial release remained pending after the issuance of my decision, in the

intervening time, Adams changed counsel twice and filed numerous *pro se* motions, though he did not file supplementary materials regarding his motion for release. Therefore, the speedy trial clock was tolled by the motion for pretrial release and the entire period of time from January 28 until September 6, 2022 (when Adams withdrew the motion), is excludable under § 3161(h)(1)(D).

Finally, Adams argues in his reply brief "that at least three periods of time covered by (h)(7)(A) ends of justice continuances are inappropriate." (Doc. No. 49 at 11). The continuances Adams challenges begin on (1) July 13, 2021; (2) September 9, 2021; and (3) May 24, 2022.

The first two periods are related. For both periods of time, Adams complains the government did not turn over discovery quickly enough. (Doc. No. 49 at 11-12 ("The discovery needed only include[d] documents that the government already has or can get from law enforcement agencies in short order. . . . [Congress'] expectation includes the government gathering and delivering the discovery within . . . 70 days . . . [so the defense has] enough time to review and prepare for trial in that 70 days."); ("[H]ad the government released the impeachment evidence at this time, the case could have been dispensed with quite quickly.")). This argument is unpersuasive.

As an initial matter, it would be unreasonable to require the government to produce all relevant discovery immediately after a defendant's arraignment, as Adams implies – to say nothing of the fact that this simply is not what the Federal Rules of Criminal Procedure require. Moreover, two of Adams' retained attorneys did not even enter an appearance in this case until August 4, 2021, 21 days after Adams was arraigned on the indictment. Further, on September 9, 2021, defense counsel requested a period of two months to review the discovery produced in this case. (*See* non-document entry dated Sept. 9, 2021). It is not credible to suggest the ends of justice did not require that counsel be given this period of time to investigate the case and prepare Adams' defense.

Adams' challenge to the 15-day period excluded following my decision on his suppression motion also falls short. First, as I stated above, this period was automatically excluded by Adams'

8

pending motion for pretrial release. Second, this period of time was necessary for counsel to review my decision on the suppression motion and to formulate a plan for the next steps in the case. As I previously concluded, the ends of justice were served by exclusion of this time and outweighed the best interest of the public and the defendant in obtaining a speedy trial. (*See* non-document entry dated May 24, 2022).

Finally, Adams also objects to the docket entry filed following the September 6, 2022 pretrial hearing. That entry reads, in pertinent part, as follows: "The Court finds that the ends of justice served by granting this time outweigh the best interest of the public and the defendant in obtaining a speedy trial such that the time is excluded from the Speedy Trial Act pursuant to 18 USC §3161(h). Time deemed excluded from 9/7/2022 until the ruling on the pending motions." (*See* non-document entry dated September 6, 2022). Adams argues "[t]he time for a pending pre-trial motion is automatic under subparagraph (h)(1)(D) and (h)(1)(H) and the 'rare' (h)(7)(A) is superfluous." (Doc. No. 54 at 1). While I note Adams' objection, he concedes that objection is of no consequence because time is automatically excluded due to his pending motions, as I specifically stated in the docket entry. (*See id.*). Therefore, I overrule his objection.

I conclude no more than 44 non-excludable days have passed since Adams' arrest on May 18, 2021. Therefore, Adams has failed to meet his burden of showing more than 90 non-excludable days have passed and I deny his motion for release pursuant to § 3164.

### B.  RETURN OF PROPERTY

Adams seeks the return of property seized by law enforcement officers and held by the government. (Doc. No. 44 at 8-9). Adams argues he is entitled to the return of property "that has no evidentiary value nor [is] subject to forfeiture," (*Id.* at 8), pursuant to Rule 41(g). (Doc. No. 49 at 14-15). But Rule 41 requires that the moving party has been "aggrieved by an unlawful search and seizure of property or by the deprivation of property." Fed. R. Crim. P. 41(g). Adams has not

9

shown an unlawful search and seizure of property occurred, as I previously denied his motion to suppress based upon the alleged unlawfulness of the search warrants at issue. (*See* Doc. No. 34).

Further, as the government notes, the general rule in the Sixth Circuit "is that seized property, other than contraband, should be returned to its rightful owner <u>once the criminal proceedings have terminated</u>." *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1992) (citation and internal quotation marks omitted) (emphasis added). Adams fails to show it would be appropriate to order the return of his property while this case remains pending.

Finally, to the extent Adams claims he is entitled to copies of electronic data on his devices pursuant to Rule 16, (Doc. No. 49 at 15-16), the government represents it has complied with its duties under Rule 16 and that it will continue to do so. (Doc. No. 46 at 11). Adams has not offered any evidence to disprove this representation.

Adams fails to show he is entitled to the return of his property at this stage of the proceedings. Therefore, I deny his motion without prejudice.

### IV. CONCLUSION

For the reasons set forth above, I deny Adams' motion for immediate release and for the return of his property. (Doc. No. 44). I deny his motion for an expediated ruling, (Doc. No. 54), as moot.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge